**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Johnson, | No. CV-24-00076-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, *et al*., | |
| Defendant. | |

David Johnson, a Phoenix Fire Department ("PFD") employee, worked as the captain of PFD's Car 959 unit ("C959") until he filed multiple grievances regarding overtime compensation and was then transferred. He filed a lawsuit against PFD and individual PFD-affiliated defendants, alleging they violated the Fair Labor Standards Act ("FLSA") by transferring him in retaliation for his grievances and refusing to pay overtime. (Doc. 1 at 9-11.) The parties later agreed the City of Phoenix ("Phoenix") is the correct defendant rather than PFD. (Doc. 72.) Phoenix now moves for partial summary judgment, arguing Johnson cannot show he is entitled to overtime pay and cannot show recoverable damages for his other claim. (Doc. 71.)

## I.   Factual Background

The parties agree Johnson worked for PFD for over 27 years, serving as a captain since 2007 and captain paramedic for C959 beginning in 2018. (Docs. 65 at 1; 81 at 2.) During that time, he received positive performance evaluations and no documented complaints or disciplinary actions (Docs. 80-9 at 1-9; 77-1 at 7), though Phoenix alleges

his behavior was unprofessional (Doc. 66-1 at 135-37 (notes from meetings with hospital coordinators who criticized Johnson's behavior)[1]).

In October 2021, C959 transitioned from a 56-hour workweek to a 40-hour workweek, a change that reduced Johnson's overtime opportunities. (Doc. 66-1 at 32, 36.) Employees could work standby shifts where they were paid $1.50 per hour to remain on call; if called out to a job, they would be paid overtime rates (one-and-a-half-times pay) for the duration of that call. (*See* Docs. 80-4 at 6; 66-1 at 125.) On October 19, 2021, Johnson was working a standby shift when he was called out to manage a pathogen-exposure incident. (Doc. 66-1 at 123.) He drove to the hospital and worked for around three hours, then returned home and made short phone calls to the hospital every few hours. (Doc. 66-1 at 124.) A total of 12.75 hours passed between the incident's beginning and the end of Johnson's shift, and PFD determined he had worked overtime for 5.5 of those hours (for the hospital visit and phone calls) but was in standby status for the remainder. (Doc. 66-1 at 124.) Johnson later filed two grievances alleging he was owed overtime for the entire 12.75-hour period. (Doc. 66-1 at 123, 131.) Those grievances were unsuccessful. (Doc. 66-1 at 125-27, 132-33.)

Shortly afterwards, in February 2022, Johnson was notified he would be removed as C959 captain and reassigned or demoted into Operations due to unprofessional conduct. (Doc. 66-1 at 139-40.) The parties agree Operations (a "roving pool") offered more overtime opportunities than the 40-hour C959 schedule, and Johnson subsequently took other roles on a 56-hour schedule. (Docs. 66 at 7; 66-1 at 41; 80 at 8.) While notifying Johnson about the removal, Chief Michael Molitor verbally instructed him not to "speak to any strategic partners about [his] removal from C959." (Doc. 66-1 at 167.) Johnson was

---

[1] Johnson argues this evidence should not be considered on summary judgment because the notes are hearsay and would be inadmissible at trial. (Doc. 80 at 6-7.) But there is no evidence those coordinators are not available for trial testimony and "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).

later reprimanded for violating that instruction. (Doc. 66-1 at 167.)

After that February 2022 conversation with Molitor, Johnson filed a grievance alleging he was transferred in retaliation for his compensation grievances. (Doc. 77-1 at 5.) He lost and filed an appeal, which was unsuccessful (though it found PFD had not followed certain procedures). (Doc. 77-1 at 5-6.) The next month, he filed a charge of retaliation with the Department of Labor ("DOL"), which investigated and found PFD had wrongfully removed Johnson from his captaincy because of his overtime grievances. (Doc. 1 at 3, 6-7; *see* Doc. 77-1.) During that investigation, PFD claimed it had removed Johnson due to business needs and prior complaints against him. (Doc. 1 at 6.) The DOL investigation found no corroboration for those rationales and further determined PFD did not follow its disciplinary process during Johnson's removal. (Doc. 1 at 7-8.) The report calculated his damages from that retaliation were $0. (Doc. 77-1 at 2.)

Johnson alleged three counts in his district-court complaint: (1) PFD violated FLSA's retaliation section by removing him from C959; (2) PFD violated FLSA's retaliation section by reprimanding him for disobeying Molitor's verbal instruction; and (3) PFD violated FLSA's overtime section by refusing to pay him overtime for the October shift. In January 2026, the parties stipulated to dismiss Frank Bayless and Michael Molitor as defendants. (Doc. 68.) Phoenix (and the remaining individual defendants) moved for partial summary judgment because, as to Counts 1 and 2, Johnson cannot show damages,[2] and the undisputed facts contradict his Count 3 overtime claim. (Doc. 65 at 2.) Johnson's response asks the court to enter summary judgment in his favor on the overtime count (Count 3) under Fed. R. Civ. P. 56(f)(1) and drops Count 2.[3] (Doc. 81 at 1, 9.)

Johnson also asks the court to take judicial notice of the DOL report and the investigative summary. (Docs. 69; 77-1.) He does not explain why he makes that request, but the notice clearly contradicts many of Phoenix's arguments. (*See, e.g.*, Doc. 77-1 at 5,

---

[2] Phoenix technically appears to be seeking summary judgment in full because it argues Johnson's lack of damages prevents Article III standing on Counts 1 and 2. (Doc. 65 at 14-15.)

[3] Johnson explicitly "abandoned any claim associated with" Molitor's reprimand. (Docs. 80 at 9; 81 at 9.) Because the reprimand forms the basis for Count 2 (Doc. 1 at 10-11), the court considers that claim to have been voluntarily dismissed with prejudice.

7 (supposed prior complaints and criticism against Johnson were not substantiated), 6 (fire department "wrongfully, and without cause, removed" Johnson from position).) Administrative records, particularly in employment cases, are routinely treated as a matter of public record subject to judicial notice for their factual findings. *See Cunningham v. Litton Indus.*, 413 F.2d 887, 889 n.2 (9th Cir. 1969) (taking judicial notice of EEOC proceeding); *see also Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (courts may take judicial notice of agency records and reports). Accordingly, the court takes judicial notice of the report with the caveat that doing so "does not establish the correctness of any determinations" within it. *King v. California Dep't of Water Res.*, 561 F. Supp. 3d 906, 910 (E.D. Cal. 2021).

## II.    Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the burden of presenting the basis for the motion and identifying evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But a non-movant cannot rest on mere allegations or denials and must instead show there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (*quoting First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

/

/

- 4 -

### III.    Analysis

#### A.  Underpayment of overtime wages

Johnson's Count 3 alleges he was not paid 7.25 hours of overtime for his work on October 19, 2021. Defendants contend those hours qualify as non-compensable standby hours under the FLSA.

An employee's standby hours are compensable as regular (or overtime) hours when the employee is "engaged to wait," but not when he is "waiting to be engaged." *See Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 350-51 (9th Cir. 1992) (simplified). The difference depends on the parties' agreement regarding these hours and the outcome of balancing seven factors used to analyze whether the employee is "unable to use the time effectively for his own purposes"—in which case the hours are compensable. *Id*.; *see Berry v. County of Sonoma*, 30 F.3d 1174, 1180 (9th Cir. 1994) (discussing test to determine if employee is so restricted he is engaged to wait). Those factors are whether there are on-premises living requirements, excessive restrictions on employees' movements, highly frequent call-ins, restrictive time limits for responses, employees' ability to easily trade on-call responsibilities, whether pagers or similar technology eases restrictions, and whether the employee actually engaged in personal activities while on call. *Owens*, 971 F.2d at 351; *see Brigham v. Eugene Water & Elec. Bd.*, 357 F.3d 931, 936 (9th Cir. 2004). Hours may not be compensable even if the employee does not have "substantially the same flexibility or freedom as he would if not on call." *Id.* at 350-51. And the standard is relatively employer-friendly; courts have found hours are not compensable even where employees must respond to calls within 15 minutes, remain on call 24 hours per day, respond to calls every 6.5 hours, and remain within the county. *Berry*, 30 F.3d at 1185-87.

The parties do not dispute that once a standby employee is called into work, any time spent working is compensable. Johnson and PFD also undisputedly agreed that he would receive standby pay during hours where he "remained available." (Doc. 66-1 at 114.)

Johnson only argues that once he was called into work on October 19, he remained engaged for the rest of his shift even when he was not calling the hospital. (Doc. 81 at 12.) Phoenix disagrees, claiming Johnson was free to conduct his own activities or sleep during the remainder of his on-call hours. (Doc. 66 at 6.)

The *Owens* factors all weigh in favor of finding Johnson was free to engage in personal activities during the time between calls such that the hours were not compensable. Phoenix provides uncontroverted evidence that for the time between calls on standby shifts, there were no on-premises living requirements or geographic restrictions. (Doc. 66-1 at 120.) Nor were there specific response-time requirements when Johnson received calls. (Doc. 66-1 at 120-21 (requiring response within "reasonable" amount of time for employees called into work).) Additionally, Johnson could choose the timing of the few outbound calls he made during that shift. (Doc. 81-1 at 3.) In fact, Johnson does not appear to refute Phoenix's argument that he made the calls voluntarily instead of because Phoenix required them (*see* Doc. 81). *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue" (simplified)). Employees sign up for standby shifts and may trade for on-call shifts, and restrictions are eased by the use of employer-provided cell phones. (Doc. 66-1 at 121.)

Finally, Johnson does not offer any evidence regarding whether he did in fact engage in personal activities during this time. The only relevant evidence either party cites is Molitor's December 2021 denial of Johnson's overtime grievance, which states Johnson "went to bed" after returning from the hospital. (Doc. 66-1 at 124.) There is no indication how Molitor came to that conclusion. But a moving defendant in summary judgment may shift the burden of producing evidence to the nonmovant merely by pointing the court to an "absence of evidence" for the plaintiff's claim. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532-33 (9th Cir. 2000). Phoenix has pointed to an absence of evidence, and Johnson has not met his corresponding burden to show any evidence exists. He cites a

dissent from a decision denying his overtime grievance, but it states only the legal conclusion that Johnson should be compensated at overtime rates because he was available to work. (Doc. 80-2 at 1.) He also cites his declaration, but it is silent regarding what he was doing (or could have been doing) during the hours between phone calls apart from the generalization that he "handled or was available for other" (unidentified) "C959 issues and responsibilities." (Doc. 81-1 at 3.) Johnson nowhere even mentions the *Owens* factors, let alone analyzing how they apply to the facts here. Courts have established that merely being available for work like this, and otherwise free to conduct personal activities, generally corresponds with waiting to be engaged. *See Owens*, 971 F.2d at 350-51.

All factors therefore weigh in favor of finding the on-call time was not compensable. *Id.* at 351. Similar cases have reached the same conclusion. *See, e.g., Henry v. Med-Staff, Inc.*, No. SA CV 05-603 DOC ANX, 2007 WL 1998653, at *13 (C.D. Cal. July 5, 2007). And unlike in many of those cases, Johnson was *making* telephone calls, which is far less restrictive than waiting to answer them. *Cf. id.* at *9-10.

Accordingly, Phoenix's motion for summary judgment as to Count 3 regarding overtime compensation is granted.

### B. Damages for Retaliation Claim

Phoenix argues summary judgment is appropriate on Count 1's retaliation claim because, having been transferred to a position that suited him better and where he could make more overtime, Johnson suffered no harm such that he lacks Article III standing.[4] (Doc. 65 at 13-14 (citing *Int'l Partners for Ethical Care Inc v. Ferguson*, 146 F.4th 841, 847 (9th Cir. 2025)).) It also argues Johnson cannot show "entitlement to any damages or other relief authorized by the statute." (Doc. 65 at 14.)

The complaint alleges Johnson is owed compensatory damages, emotional distress damages for which he has medical expenses, punitive damages, and attorneys' fees under

---

[4] Phoenix has conflated standing and the merits. "The failure [to prove damages] is a failure on the merits rather than a failure of jurisdiction." *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, 589 F.3d 881, 886 (7th Cir. 2009). The court therefore analyzes whether Johnson has sufficient evidence of damages not for purposes of standing, but for proceeding to trial on the merits.

Title VII[5] due to PFD's retaliation. (Doc. 1 at 10, 13.) Additionally, his summary-judgment briefing for the first time requests reinstatement to his position in C959 and nominal damages. (Doc. 81 at 15.)

Johnson's discovery disclosure asserts he should be compensated for the difference "between the overtime rate [he] was earning" at C959 ($56.04) and the overtime rate he earned between March 20, 2022 and April 30, 2023 ($50.83), or $6,875.25. (Doc. 66-1 at 174-75.) Although Phoenix raised the issue (Doc. 65 at 15), Johnson's briefing includes no evidence or argument regarding his monetary damages beyond a cursory reference to that discovery disclosure (Docs. 80; 81 at 15). *Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132 (failure to respond to argument in briefing constitutes waiver). Meanwhile, Phoenix presents facts Johnson could, and did, work more overtime once he was removed from C959 (Doc. 66-1 at 36))—meaning he could earn more than he did in C959 if he chose to take enough overtime shifts. (Doc. 65 at 15.) But there are no facts showing Johnson actually worked enough overtime shifts such that his total monthly income surpassed his earnings at C959 (*compare* Doc. 66 at 2-3 *with* Doc. 66 at 7 *and* Doc. 66-1 at 36), and in any event the opportunity to work more overtime hours does not negate the harm of lower compensation per hour worked. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002) (cut in pay "clearly" adverse action despite prospective bonuses).

Johnson's monetary damages must be limited by his post-C959 earnings and what he could have earned after his removal if he had chosen 40-hour-per-week roles more similar to C959's schedule and pay scheme. But Johnson has raised a genuine dispute of material fact that he may be owed some small amount of compensation based on the lower overtime rate he earned following his removal. Phoenix's request for summary judgment as to Johnson's damages claims for Count 1 is therefore denied.

Johnson has not, however, created a dispute of material fact regarding his emotional distress damages. Johnson waived any argument that he is owed damages for stress caused by litigation by failing to respond to Phoenix's argument on the point (Doc. 65 at 17).

---

[5] He does not explain why Title VII entitles him to attorneys' fees if he is suing under FLSA.

*Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132. And the only evidence suggesting other types of emotional distress—from reputational damage or anything else—is the discovery disclosure's generalization that Johnson suffered the loss of career opportunities and reputational harm, with medical records to substantiate "medical and emotional health issues caused by the retaliation" being "forthcoming." (Doc. 66-1 at 175.) That scant, conclusory evidence is convincingly contradicted by Phoenix's testimony suggesting Johnson is content in his new role (Doc. 87 at 9 (compiling deposition testimony); *see* Doc. 66-1 at 44-45) and Johnson's silence now regarding his emotional distress. *See id.* Ultimately, Johnson has not shown "competent evidence from which a jury could fairly estimate" emotional distress damages and cannot proceed with them. *City of Vernon v. S. California Edison Co.*, 955 F.2d 1361, 1372 (9th Cir. 1992) (simplified).

The parties also discuss Johnson's punitive-damages claim and two other remedies requested for the first time in the summary-judgment briefing: reinstatement and nominal damages.[6] (*Compare* Doc. 81 at 15 *with* Doc. 66-1 at 174-75.) Plaintiffs typically "cannot create a new theory of recovery" in a declaration in opposition to a motion for summary judgment. *Est. of Kerr v. S. California Reg'l Rail Auth.*, No. DCV1301855JGBSPX, 2014 WL 12606316, at *3 (C.D. Cal. Jan. 29, 2014). But Rule 54(c) permits parties that did not demand relief in their pleadings to receive the relief they are owed, unless that failure to initially demand it causes prejudice to the other party. *Rental Dev. Corp. of Am. v. Lavery*, 304 F.2d 839, 842 (9th Cir. 1962); *see Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 869-70, 874 (9th Cir. 2017) (permitting nominal damages pleaded for the first time at summary judgment). Phoenix did not argue prejudice (Doc. 87), so the new relief requested is not barred on that basis.

More important to these damages claims is the uncertain case-law regarding whether FLSA permits punitive and nominal damages. *See Johnson v. Helion Techs., Inc.*, No. CV DKC 18-3276, 2022 WL 3043413, at *3 (D. Md. Aug. 2, 2022) (nominal damages

---

[6] Johnson likewise argues for the first time that he wants the reason for his transfer—"lack of professionalism and inability to foster relationships"—removed from his employment record. This is not an available remedy because the only relevant evidence shows his personnel file already excludes the documented reason for his transfer. (Doc. 87-1 at 6.)

available under FLSA); *Schmehl v. Spokane Cnty.*, No. 2:18-CV-0157-TOR, 2020 WL 7059578, at *5 (E.D. Wash. Dec. 2, 2020) (nominal damages not available under FLSA); *Campbell-Thomson v. Cox Commc'ns*, No. CV-08-1656-PHX-GMS, 2010 WL 1814844, at *11 (D. Ariz. May 5, 2010) (discussing circuit split regarding punitive damages under FLSA); *see Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999) (finding it "persuasive" that FLSA permits punitive damages but declining to decide the issue).

The court need not wade into these other types of damages Johnson claims at this stage. He has raised a dispute of material fact regarding monetary damages, so the claim may proceed to trial. Emotional damages are not available, but the other forms of relief will become relevant only if Johnson prevails on the merits of his retaliation claim.

**IV.    Conclusion**

Johnson has raised a dispute of material fact whether he suffered any monetary harm from his removal, so Phoenix's motion for summary judgment on that issue is denied as to Count 1. However, Johnson cannot pursue emotional distress damages on that count because he offered no facts supporting such damages. Summary judgment is granted as to Count 3, Johnson's overtime claim, and the court accepts Johnson's voluntary dismissal of Count 2.

Accordingly,

**IT IS ORDERED** Phoenix's Partial Motion for Summary Judgment (Doc. 65) is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** Count 2 is dismissed with prejudice pursuant to Johnson's request.

/

/

/

/

/

/

**IT IS FURTHER ORDERED** the parties must submit a joint statement no later than **July 28, 2026** identifying possible trial dates between February 23, 2027 and March 19, 2027. Trial will be held Tuesday through Friday and the court expects the trial will not be longer than three days.

Dated this 21st day of July, 2026.

Honorable Krissa M. Lanham
United States District Judge

- 11 -